**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J. and SELF, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 27, 2017**

# In the Court of Appeals of Georgia

A17A0653. OSPREY COVE REAL ESTATE, LLC v. SE-027 TOWERVIEW CONSTRUCTION, LLC.

SELF, Judge.

In this contract dispute arising from the development and sale of residential lots in Camden County, Towerview Construction, LLC ("Towerview") filed a complaint against Osprey Cove Real Estate, LLC ("Osprey Cove") alleging fourteen separate causes of action including fraud and deceit, unjust enrichment, breach of contract, and intentional infliction of emotional distress. Osprey Cove answered and filed a motion to dismiss Towerview's complaint for failure to state a claim or, in the alternative, for a more definite statement targeting eight[1] of Towerview's fourteen causes of action.

---

[1] Specifically, Osprey Cove's motion sought a more definite statement on Towerview's claims for slander of title, breach of contract, fraud and deceit, fraud in the inducement, fraudulent misrepresentation, negligent misrepresentation, tortious interference with a business relationship, and tortious interference with a contractual

See OCGA §§ 9-11-12 (b) (6), 9-11-12 (e). The Superior Court of Camden County denied Osprey Cove's motion in its entirety, and we granted Osprey Cove's application for discretionary appeal. Because there is no current provision of Georgia law which would support a claim of intentional infliction of emotional distress by a business entity, and because Towerview failed to plead certain counts related to fraud with particularity, we reverse the trial court in part for the reasons discussed below. In all other respects, we affirm the judgment of the trial court.

1. Under Georgia law,

> [a] motion to dismiss pursuant to OCGA § 9-11-12 (b) (6) will not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation and punctuation omitted.) *State v. Singh*, 291 Ga. 525, 529 (3) (731 SE2d 649) (2012). To that end,

> minimum pleading requirements are found in OCGA § 9-11-8 (a) (2) (A), which requires that the complaint contain "[a] short and plain

_____

relationship.

2

statement of the claims showing that the pleader is entitled to relief," and we have held that the touchstone is fair notice — "this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading."

(Citations omitted.) *Aetna Workers' Comp Access v. Coliseum Medical Center*, 322 Ga. App. 641, 651 (4) (746 SE2d 148) (2013). While "[a] trial court's ruling on a motion to dismiss for failure to state a claim is subject to de novo review[,]" *Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, 356 (1) (713 SE2d 456) (2011), we "accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff." *Bush v. Bank of N. Y. Mellon*, 313 Ga. App. 84, 89 (720 SE2d 370) (2011).

So viewed, Towerview and Osprey Cove executed four construction loan agreements (the "construction contracts") to develop four residential lots in Camden County. Generally, the construction contracts deeded the lots to Towerview "as owner and . . . as the general contractor and builder for the residences to be constructed on each respective lot," while Osprey Cove "acted as the mortgagee by providing [Towerview] with a construction loan and lot loan for each respective lot." Once the

residence on each respective lot sold, the construction loan for the lot would be satisfied and Towerview would receive a "cost-plus fee for its construction services."

During construction, Towerview alleged that Osprey Cove "interfered" with its work by

> improperly contacting [Towerview]'s various subcontractors outside the presence of [Towerview], giving [Towerview]'s subcontractors drastically different directives and instructions from what [Towerview] had given them to complete the work under the pre-approved plans and specifications, and made false statements and allegations involving [Towerview] that severely interfered with the working relationship between [Towerview] and its subcontractors.

Towerview also contended that certain provisions of the construction contracts were internally inconsistent. For example, Section 2 (b) of the construction contracts provide that Towerview "is . . . indefeasibly seized of marketable title to the Property in fee simple absolute and has full power and lawful right to convey and encumber the same." However, Section 9 (a) states that Osprey Cove "shall have the sole authority to determine the sale price of the property and the sole right to direct its sale [12 months after the closing of the purchase by Towerview from Osprey Cove of the Property] and thereafter." In addition, one paragraph of Section 9 (b) directed Towerview to "list the Property for sale with St. Marys Realty or another broker

4

directed by [Osprey Cove]" and noted that any proceeds from the sale of a lot, following satisfaction of the construction loan and builder fees, "shall be paid to [Osprey Cove]. . . ." In short, Towerview alleged that Osprey Cove "never intended to convey to [Towerview] the full property rights of an owner" and that Osprey Cove interfered with Towerview's subcontractors to cause delay in an effort to trigger the default provisions of the construction loans.

When the first lot sold in August 2015, Towerview alleged that it did not receive any payment from the sale proceeds. At about the same time, St. Marys Realty stopped listing homes for sale in the St. Marys area, and Osprey Cove became a licensed real estate brokerage company. Thereafter, Towerview attempted to list the three remaining properties with other agents and brokers, but Osprey Cove refused to approve the listings. After August 2015, Osprey Cove only approved listings by Towerview if Osprey Cove was the listing agent. Towerview also alleged that Osprey Cove "failed to continuously list [the three remaining lots] for sale, refused to accept offers and refused to consummate any sales," and used two of the lots as model units rather than listing them for sale. Towerview further contended that Osprey Cove "threaten[ed]" other agents and brokers when Towerview attempted to list the lots for sale with anyone other than Osprey Cove.

5

According to Towerview, Osprey Cove's actions under the "sham and illusory" construction contracts created an environment in which Osprey Cove, "while acting as listing agent and broker could delay in selling the subject properties, and while acting as mortgagee could then declare [Towerview] in default of the construction loans and lot loans and foreclose out [Towerview]'s interest so that [Towerview] would receive no payment for its construction services." Ultimately, Towerview alleged that Osprey Cove's "intent from the beginning was to frustrate the purpose of the Construction Contracts, to establish a scheme to defraud [Towerview] of receiving any payment at all[,] and to declare [Towerview] in default of the Construction Contracts through no fault of [Towerview]."[2]

---

[2] Although Towerview's brief in this Court refers to a transcript of the trial court's hearing on Towerview's request for a temporary restraining order, there is no indication the trial court considered the evidence from that hearing in ruling upon Osprey Cove's motion to dismiss. Moreover, it would have been improper for the trial court to consider such evidence when evaluating a motion to dismiss pursuant to OCGA § 9-11-12 (b) (6). See generally *Campbell v. Ailion*, 338 Ga. App. 382, 383 (790 SE2d 68) (2016) (in reviewing motion to dismiss for failure to state a claim, we "treat[] all material allegations set forth in the complaint as true, treat[] all denials set forth in the answer as false, and resolv[e] any doubts in favor of the plaintiff"). Rather, consideration of evidence outside the pleadings "converts [a] motion to dismiss into a motion for summary judgment[,]" and that was not done here. Id. Accordingly, we have not incorporated any evidence developed in that hearing into our analysis.

2. In its first enumeration of error, Osprey Cove contends the trial court erred in denying its motion to dismiss Towerview's claim for intentional infliction of emotional distress because Towerview, as a business entity, is unable to suffer emotional distress. We agree.

While neither party has identified any Georgia authority on point, and our research has yielded none, other courts have addressed similar claims. In *Lampliter Dinner Theater v. Liberty Mut. Ins. Co.*, 792 F2d 1036, 1039, n. 2 (I) (11th Cir. 1986), the Eleventh Circuit noted that Alabama's then newly-recognized "tort of outrageous conduct . . . is also known as the intentional infliction of emotional distress." Id. The court agreed with the district court's dismissal of the plaintiff business's claim for outrageous conduct because "corporations cannot experience emotional distress and cannot therefore maintain a suit for outrageous conduct." Id. See also *FDIC v. Hulsey*, 22 F3d 1472, 1489 (III) (10th Cir. 1994) (applying Oklahoma law; "Since a corporation lacks the cognizant ability to experience emotions, a corporation cannot suffer emotional distress. Thus, no claim for intentional infliction of emotional distress lies."); *HM Hotel Properties v. Peerless Indem. Ins. Co.*, 874 FSupp.2d 850, 854 (III) (A) (1) (D. Ariz. 2012) (applying Arizona law; plaintiff "failed to state a claim for intentional or negligent infliction of

emotional distress because, as [an LLC], it cannot experience emotional distress");

*Tekdoc Svcs., LLC v. 3i-Infotech, Inc.*, No. 09-6573 (MLC), 2012 U.S. Dist. LEXIS 115728, *59 (II) (B) (2) (f) (D.N.J. 2012) (applying New Jersey law; "Business organizations cannot experience emotions and, as such, cannot experience emotional distress."); *Barreca v. Nickolas*, 683 NW2d 111, 124 (III) (B) (Iowa 2004) ("The Factory, as a limited liability company, certainly cannot suffer emotional distress; such would stretch the bounds of the legal fiction of corporate personhood too far.").

We find the logic of these authorities persuasive. Therefore, we conclude that business entities, including limited liability companies, cannot recover on claims of intentional or negligent infliction of emotional distress as a matter of law because business entities lack "the cognizant ability to experience emotions. . . ."[3] *Hulsey*, 22 F3d at 1489 (III). Compare *Oglethorpe Power Co. v. Estate of Forrister*, 332 Ga. App. 693, 712 (3) (b) (774 SE2d 755) (2015) (in nuisance cases, "a limited liability company may have a cause of action for "discomfort and annoyance" affecting the use of its property for the purposes intended by its members and those they permit to join them"; "discomfort and annoyance" damages are therefore separate from

---

[3] Because no such claims have been raised, we need not decide here whether claims for the intentional or negligent infliction of emotional distress might accrue to individual members of a limited liability company.

emotional distress; see id. at 707-710 (3) (a)]). As a result, we find that "the allegations of [Towerview's] complaint disclose with certainty that [Towerview] would not be entitled to relief under any state of provable facts asserted in support [of its claim for intentional infliction of emotional distress]. . . ." *Singh*, 291 Ga. at 529 (3). Accordingly, we reverse the trial court's denial of Osprey Cove's motion to dismiss Towerview's claim of intentional infliction of emotional distress.

3. Osprey Cove next asserts that the trial court erred in denying its motion to dismiss Towerview's claims of fraud and deceit, fraud in the inducement, fraudulent misrepresentation, and negligent misrepresentation.[4] In part, we agree.

In paragraphs 5 through 46 of its complaint, Towerview recited various facts concerning the execution of the construction contracts at issue, the relationship between the parties, and how that relationship soured over time. These factual

---

[4] See *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 769-770, n. 1 (208 SE2d 794) (1974) (elements of fraud and deceit); *Grand Master Contracting v. Lincoln Apartment Mgmt.*, 314 Ga. App. 449, 451 (2) (724 SE2d 456) (2012) (elements of fraudulent misrepresentation); *Liberty Capital, LLC v. First Chatham Bank*, 338 Ga. App. 48, 54 (2) (a) (789 SE2d 303) (2016) (elements of negligent misrepresentation). See also *Roberts v. JP Morgan Chase Bank*, 342 Ga. App. 73, 78-79 (3) (802 SE2d 880) (2017) (comparison of fraud and negligent misrepresentation); *Kent v. A.O. White, Jr. Consulting Engineers*, 253 Ga. App. 492, 499 (4) (a) (559 SE2d 731) (2002), overruled on other grounds, *Time Warner Entertainment v. Six Flags Over Georgia*, 254 Ga. App. 598 (563 SE2d 178) (2002) (comparison of fraud and deceit and fraudulent misrepresentation).

assertions were incorporated into each count of Towerview's complaint, which merely recited the elements for each separate cause of action. However, what is lacking is any allegation concerning a fraudulent statement by Osprey Cove. At its core, Towerview's complaint appears to focus upon the alleged one-sided nature of the construction contracts it executed with Osprey Cove. But even when viewed in such a manner, the complaint lacks any factual allegations which could be construed as fraud. In short, no specific instance of fraud was pled. The trial court denied Osprey Cove's motion to dismiss or, in the alternative, for a more definite statement related to these counts and, in so ruling, it erred in part.

While we agree that Osprey Cove failed to plead its claims of fraud with particularity, see OCGA § 9-11-9 (b), the proper remedy to address such deficiencies in pleading is a motion for "a more definite statement, not a dismissal of the complaint or judgment on the pleadings, at least so long as the plaintiff is able and willing to amend his pleadings to conform to the statutory requirements." (Citation and punctuation omitted.) *Campbell v. Ailion*, 338 Ga. App. 382, 388-389 (4) (790 SE2d 68) (2016). Osprey Cove requested the relief of a more definite statement as an alternative argument in its motion to dismiss, but the trial court denied that portion of Osprey Cove's motion. Accordingly, we reverse the trial court's order denying

10

Osprey Cove's motion for a more definite statement as to Towerview's claims of fraud and deceit, fraud in the inducement,[5] fraudulent misrepresentation, and negligent misrepresentation.

4. Osprey Cove also enumerates as error the trial court's denial of its motion to dismiss Towerview's claim for wrongful foreclosure. As with Osprey Cove's other arguments, we review the trial court's ruling de novo. *Infinite Energy*, 310 Ga. App. at 356 (1).

In that vein, we note that Towerview's complaint contains an allegation that Osprey Cove stated an "intent to immediately proceed with a nonjudicial foreclosure" and a prayer that the trial court "cancel the upcoming foreclosure sale" of two lots. As a result, the allegations of the complaint show that, at the time Towerview filed its complaint, a foreclosure sale had not yet occurred. "[A]s a matter of law, a plaintiff cannot state a claim for wrongful foreclosure when no foreclosure sale has taken

---

[5] Specifically regarding Towerview's claim for fraud in the inducement, its complaint contains no allegation that it rescinded the construction contracts prior to filing the present action. See *Novare Group v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011). Either Towerview rescinded the construction contracts pre-suit or it did not, and we are unable to decide that issue at this early stage of the proceedings. If discovery or further pleadings demonstrate that Towerview did not rescind the construction contracts prior to filing suit, Towerview's claim for fraud in the inducement may be ripe for dismissal. See id.

11

place."[6] (Citation and footnote omitted). *Humphrey v. JP Morgan Chase Bank*, 337 Ga. App. 331, 333 (1) (a) (787 SE2d 303) (2016). Notwithstanding Towerview's right to seek supplementation of its original complaint with allegations concerning any foreclosure sale that occurred after the filing of its complaint, see OCGA § 9-11-15 (d)[7], we are bound by the record and our duty to confine our review to Towerview's complaint to conclude that the trial court erred in denying Osprey Cove's motion to dismiss Towerview's claim for wrongful foreclosure. See *Humphrey*, 337 Ga. App. at 333 (1) (a); *Sparra*, 336 Ga. App. at 420 (1) (a).

---

[6] The record suggests a foreclosure sale of the two lots may have occurred before the trial court issued its order denying Osprey Cove's motion to dismiss. Compare *Humphrey*, 337 Ga. App. at 333 (1) (a) ("Georgia law recognizes separate causes of action for wrongful foreclosure and wrongful attempted foreclosure. But [Towerview]'s complaint clearly referenced wrongful foreclosure, rather than an attempted foreclosure.") (citations and footnotes omitted). See also *Sparra v. Deutsche Bank Nat. Trust Co.*, 336 Ga. App. 418, 420 (1) (a) (785 SE2d 78) (2016) (no foreclosure sale); *Patel v. JP Morgan Chase Bank*, 327 Ga. App. 321, 326 (2) (757 SE2d 460) (2014) (no foreclosure sale at time of motion for summary judgment).

[7] "Upon motion of a party the court may . . . permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense." See also *Blanton v. Duru*, 247 Ga. App. 175, 177 (2) (543 SE2d 448) (2000). Nothing in this opinion should be construed as a ruling on whether Towerview should be allowed to supplement its complaint under OCGA § 9-11-15 (d). Such matters are committed to the discretion of the trial court. See *Blanton*, 247 Ga. App. at 177 (2).

5. Next, Osprey Cove contends that the trial court erred in denying its motion to dismiss Towerview's claim of unjust enrichment because Towerview's complaint "establishes the existence of the valid [construction contracts] between Osprey Cove and Towerview, which preclude Towerview's claim of unjust enrichment. . . ." However,

> Georgia law permits a plaintiff to proceed to trial on alternative theories of recovery. Thus, if a factfinder concludes that [Osprey Cove] is liable on [Towerview's] breach of contract theory, the issue of [Osprey Cove's] liability under the alternative theory of unjust enrichment . . . would become moot. Conversely, if the factfinder concludes that [Osprey Cove] did not breach any express contract, questions of fact would exist as to whether [Osprey Cove] is liable under the alternative theory.

(Citation and punctuation omitted.) *Reynolds v. CB&T*, No. A17A0891, 2017 Ga. App. LEXIS 426, at *15 (4) (Sept. 22, 2017). See also *Campbell*, 338 Ga. App. at 387-388 (2). Evidence developed through discovery may reveal Osprey Cove encouraged Towerview to confer a benefit upon Osprey Cove by completing construction on the lots before Osprey Cove foreclosed. See *Reynolds*, 2017 Ga. App. LEXIS 426 at *16. As a result, we conclude that the trial court did not err in denying Osprey Cove's motion to dismiss Towerview's claim for unjust enrichment.

13

6. Similarly, in several enumerations of error, Osprey Cove asserts that the trial court erred in failing to dismiss Towerview's causes of action for slander of title, breach of contract, tortious interference with a business relationship, tortious interference with a contractual relationship, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. After review of Towerview's complaint, including the factual allegations coupled with the individual causes of action, as well as the liberal notice pleading requirements codified at OCGA § 9-11-8 (a) (2) (A), we cannot conclude that Osprey Cove has demonstrated that Towerview "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Singh*, 291 Ga. at 529 (3). See also *Dillingham v. Doctors Clinic*, 236 Ga. 302, 303 (223 SE2d 625) (1976) ("[T]he objective of the [Civil Practice Act] is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details."); *Campbell*, 338 Ga. App. at 384-385 ("[I]t is not necessary for a complaint to set forth all of the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim[;] [r]ather, the Georgia Civil Practice Act requires only notice pleading and . . . pleadings are to be construed

14

liberally and reasonably to achieve substantial justice. . . .”). Instead, we agree with the trial court that "basic discovery should eliminate any uncertainty about the basis of [Towerview]'s claims." Accordingly, we affirm the remainder of the trial court's denial of Osprey Cove's motion to dismiss or, in the alternative, for a more definite statement.

*Judgment affirmed in part and reversed in part. Dillard, C. J., and Ray, P. J., concur.*